**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SIEBERT HOOPER, III,

        Plaintiff,

vs.                                                                          Case No. 3:16-cv-910-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Siebert Hooper, III ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of high blood pressure, "[p]roblems with both hips," "[p]roblems with both legs," depression, headaches, lower back pain, and "[s]leeping problems." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed September 20, 2016, at 94, 107, 118, 131, 247 (emphasis omitted). On June 25, 2012 Plaintiff filed applications for DIB and SSI, alleging an onset disability date of November 30, 2007. Tr. at 94-104 (DIB), 107-17 (SSI). Plaintiff's applications were denied initially, see Tr. at 94-104, 105, 146, 147-51

---

      [1]       Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      [2]       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed September 20, 2016; Reference Order (Doc. No. 13), entered September 21, 2016.

(DIB); Tr. at 106, 107-17, 152-57, 158 (SSI), and were denied upon reconsideration, see Tr. at 118-30, 144, 161, 162-66 (DIB); Tr. at 131-43, 145, 167 (SSI).

On August 18, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by a non-attorney representative, and a vocational expert ("VE"). Tr. at 31-73. The ALJ issued a Decision on October 24, 2014, finding Plaintiff not disabled through the date of the Decision. Tr. at 12-25.

The Appeals Council then received additional evidence in the form of a brief authored by Plaintiff's representative. Tr. at 5; see Tr. at 320-21 (brief). On June 21, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On July 14, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "The ALJ erred by not appropriately evaluating the medical evidence." Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem."), filed October 4, 2016, at 8 (emphasis and some capitalization omitted). Plaintiff apparently takes issue with the ALJ's assessment of the opinions of Dr. Judella Haddad-Lacle and Dr. Ghania Masri, two of Plaintiff's treating physicians. See id. at 8-13. On February 21, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-24. At step one, the ALJ determined that "[Plaintiff] has not engaged in substantial gainful activity since November 30, 2007 the alleged onset date." Tr. at 14 (emphasis and citations omitted). At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, generalized arthritis of the lower extremities, status post history of crushing injury, history of headaches[,] bipolar disorder[,] and anxiety." Tr. at 14 (emphasis and citations omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citations omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a). Specifically, he can lift and carry, push and pull ten pounds occasionally and five pounds frequently. [Plaintiff] is able to sit for four hours at a time, for a total of eight hours during an eight-hour workday; and stand and/or walk for [thirty] minutes at a time, for a total of two hours during an eight-hour workday. [Plaintiff] cannot climb ropes ladders or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] should avoid concentrated exposure to vibrations and work hazards including unprotected heights and dangerous machinery. Mentally, [Plaintiff] cannot perform complex tasks but he is fully capable of performing simple to detailed tasks consistent with semi-skilled work with a[ Specific Vocational Preparation] of three or four with concentration on those tasks for two-hour periods with normal break and a lunch.

Tr. at 16-17 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work."[4] Tr. at 22 (emphasis and citations omitted). At step five, after considering Plaintiff's age ("42 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "[c]harge [a]ccount [c]lerk," "[s]urveillance systems monitor," and "[d]ocument preparer, microfilm." Tr. at 23-24. The ALJ concluded that "[Plaintiff] has not been under a disability . . . from November 30, 2007, through the date of th[e D]ecision." Tr. at 24 (emphasis and citations omitted).

---

4 Plaintiff has past work as a bagger, nurse assistant, and fast food worker. Tr. at 22-23.

-4-

### **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### **IV. Discussion**

The undersigned first sets out the applicable law. Then, the issue raised by Plaintiff is addressed.

**A. General Law**

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor,"

Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

## B. ALJ's Evaluation of the Medical Evidence

As noted above, Plaintiff argues that "the ALJ erred by not appropriately evaluating the medical evidence." Pl.'s Mem. at 8 (emphasis and some capitalization omitted). Plaintiff asserts that "[Dr. Haddad-Lacle and Dr. Masri] render[ed] consistent opinions," id. at 13, and that "[o]bjective testing is not necessary for a treating physician to render an opinion about the plaintiff's ability to work," id. at 11. Responding, Defendant contends that "the ALJ was not obligated to accept the disability opinions of Plaintiff's treating sources." Def.'s Mem. at 5 (some capitalization omitted). According to Defendant, "Drs. Haddad[-Lacle] and Masri recorded their disability opinions on pre-printed forms, which provided little to no narrative or insight into the reasons behind their conclusions." Id. at 6-7.

Dr. Haddad-Lacle, who practices family medicine, began treating Plaintiff on November 29, 2011 mainly for pain in his lower back and lower extremities. See Tr. at 414-22, 492-500 (duplicate), 489-91.The administrative transcript contains four treatment notes from Dr. Haddad-Lacle. See Tr. at 414-22, 492-500 (duplicate), 489-91. The most recent treatment note in the transcript is dated August 21, 2012. See Tr. 489-91. She diagnosed Plaintiff, in relevant part, with: "Lower back pain," Tr. at 415, 490; "[c]hronic pain syndrome," Tr. at 415, 418, 421, 490; and "[c]rush injury of the trunk," Tr. at 415, 418. She completed

four Medical Verification Forms in which she opined that Plaintiff is unable to work sitting down or standing up. Tr. at 680 (dated May 8, 2013), Tr. at 683 (dated January 28, 2013), Tr. at 684 (dated May 21, 2012), Tr. at 686 (dated February 27, 2012). She also stated that Plaintiff is unable to lift more than ten pounds and cannot squat or bend.[7] Tr. at 680, 683, 684, 686.

The ALJ gave "no weight" to Dr. Haddad-Lacle's opinion that Plaintiff is unable to work. Tr. at 21. In doing so, he noted that "the final responsibility for determining if a claimant is 'disabled' or 'unable to work' is reserved for the Commissioner." Tr. at 21. He gave "little weight" to "Dr. Haddad[-Lacle's] opinions as to the [Plaintiff's] functional abilities" because they "are not supported by the objective medical evidence or her own treatment notes." Tr. at 21. According to the ALJ, "[Plaintiff] has had very little treatment beyond medication management for lower back pain, chronic pain syndrom due to fractures and crushing injury as identified by Dr. Haddad[-Lacle]." Tr. at 21. Additionally, the ALJ noted that "[Dr. Haddad-Lacle's] opinions are inconsistent with [Plaintiff's] own testimony that he drives on a daily basis and shops with his daughter and/or fiancé." Tr. at 21.

Dr. Ghania Masri, who practices general medicine, treated Plaintiff for pain in his lower back and legs. See Tr. at 640-45, 650-52, 661-64. There are four treatment notes from Dr. Masri in the administrative transcript; the earliest one is dated September 18, 2013, Tr. 661-64, and the latest one is dated May 7, 2014, Tr. 640-42. She diagnosed Plaintiff, in relevant part, with "[c]hronic pain," Tr. at 645, 652, and "[c]rush injury of the trunk," Tr. at 645, 652, 664. She completed two Medical Verification Forms: one on September 18, 2013, Tr.

---

[7] On the May 2013 Medical Verification Form, Dr. Haddad-Lacle also represented that "[Plaintiff's] most recent office visit" was on April 15, 2013. Tr. at 680. The administrative transcript, however, does not contain a treatment note with this date. See generally administrative transcript.

at 677, and one on February 26, 2014, Tr. at 676. On the September 2013 form, she opined Plaintiff could work sitting down, but could not work standing or do any heavy lifting. Tr. at 677. On the February 2014 form, however, she stated Plaintiff is not able to work sitting down or standing up, and cannot lift more than ten pounds. Tr. at 676.

The ALJ gave Dr. Masri's opinion "little weight" for the following reasons:

> Dr. Masri's initial opinion in September 2013 as to [Plaintiff's] functional abilities is not wholly inconsistent with the [RFC determination]. However, there is nothing in Dr. Masri's treatment notes to support that [Plaintiff] could not work sitting down on a full-time basis. Moreover, Dr. Masri's opinion in February 2014 is completely inconsistent with the treatment records and the other objective medical evidence of record and contains no explanation for the change in findings concerning [Plaintiff's] limitations. For example, Dr. Masri's physical examination of [Plaintiff] in February 2014 showed that he had low back pain with spasm and decreased sensation on both quads and his lower extremities had no clubbing, cyanosis or edema; Dr. Masri noted [Plaintiff] has muscle atrophy without indicating to which muscles she was referring. Dr. Masri said [Plaintiff] was ambulating using a rolling walker at home; [Plaintiff] reported feeling like his legs were giving up on him[.] [H]owever[,] treatment notes do not support that a walker is medically necessary. Further, the record does not contain evidence that [Plaintiff] has had any recent imagining studies to determine the extent of his reported injuries.

Tr. at 21 (citation omitted).

Upon review, the undersigned finds that the ALJ did not err in assessing the opinions of Dr. Haddad-Lacle and Dr. Masri. The ALJ summarized the treatment notes of both physicians and determined that the limitations they assigned were inconsistent with their own treatment notes and other medical evidence. See Tr. at 18, 20-21. In noting this inconsistency, the ALJ provided adequate reasons for discounting their opinions. Those reasons are supported by substantial evidence in the record.

First, the opinions are conclusory and unsupported by objective medical evidence. See Edwards, 937 F.3d at 583. Dr. Haddad-Lacle and Dr. Masri concluded that Plaintiff was

unable to work and had significant functional limitations, but they did not provide any support for those opinions.[8] See Provenza v. Comm'r of Soc. Sec., No. 2:15-CV-432-FTM-CM, 2016 WL 3475641, at *6 (M.D. Fla. June 27, 2016) (stating that "[f]orm questionnaires or so-called 'checklist' opinions generally are disfavored"), Hammersley v. Astrue, No. 508-CV-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (noting that "courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions). Moreover, the doctors' opinions were "not accompanied by objective medical evidence." Edwards, 937 F.3d at 583. Notably, the ALJ observed that "the record does not contain evidence that [Plaintiff] has had any recent imaging studies to determine the extent of his reported injuries." Tr. at 21.

Second, the ALJ correctly noted that the opinions expressed in the Medical Verification Forms are unsupported by the medical record as a whole, including Dr. Haddad-Lacle's and Dr. Masri's own treatment notes. See Tr. at 21. The doctors' treatment notes are brief, consist mostly of statements regarding Plaintiff's subjective complaints,[9] and do not contain any functional limitations or objective medical findings supporting the limitations

---

[8] In addition, as the ALJ correctly observed, Dr. Masri's conclusions in the February 2014 Medical Verification Form regarding Plaintiff's ability to work are inconsistent with those in the September 2013 form, See Tr. at 21, 676-77 (forms), but the form does not offer an explanation for the difference in conclusions.

[9] Plaintiff does not challenge the ALJ's credibility determination. See generally Pl.'s Mem. The undersigned finds the ALJ "articulate[d] explicit and adequate reasons" for finding Plaintiff not credible. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). Specifically, the ALJ found that "[Plaintiff's] activities of daily living are not as restricted as he has alleged," and that he has been inconsistent in reporting his symptoms. Tr. at 20-21.

assigned by the doctors in the Medical Verification Forms. See Tr. at 414-22, 492-500 (duplicate), 489-91, 640-45, 650-52, 661-64.

In addition, the medical record as a whole, including both doctors' treatment notes, reflects that Plaintiff's treatment has been conservative in nature, consisting mostly of pain medication and no significant treatment with a specialist or physical therapist. Notably, according to Dr. Masri's treatment notes from May 7, 2014, "[Plaintiff] restarted . . . pharmacotherapy recently, but he was [discharged] from their clinic because of non[compliance] with the pain agreement contract." Tr. at 640. Dr. Masri also indicated that "[Plaintiff] was [discharged] from [physical therapy] because he missed [three] consecutive [appointments]." Tr. at 640.

A few days later, on May 12, 2014, Kimberly Bravo, ARNP referred Plaintiff to Northside Brooks Rehabilitation ("Brooks Rehabilitation"), a physical therapy center. Tr. at 530. On June 25, 2014, however, Brooks Rehabilitation sent Ms. Bravo a letter stating Plaintiff had not been evaluated yet because "[their] numerous attempts to contact [him] for scheduling have not been successful." Tr. at 529. It does not appear Plaintiff received physical therapy thereafter, as the administrative transcript does not contain any treatment notes from Brooks Rehabilitation or any other physical therapy facility.[10] See generally administrative transcript. Further, the administrative transcript contains only one treatment note, dated July 16, 2014, from a pain management specialist. See Tr. at 574-76. Thus, the medical record as a whole, including Plaintiff's conservative treatment, is inconsistent with the doctors' opined severity of Plaintiff's condition.

---

[10] At the hearing, which was about three months after Ms. Bravo's referral, Plaintiff stated: "I[ have] done physical therapy and it has[ not] done any good. . . . They tried it now twice." Tr. at 52. He reported that his last physical therapy appointment was "nine months [before the hearing]." Tr. at 52.

-12-

The undersigned finds the ALJ did not err in finding that the medical record as a whole, including Dr. Haddad-Lacle's and Dr. Masri's treatment notes, does not support the significant limitations assigned by the doctors in the Medical Verification Forms. Thus, the ALJ's discounting of Haddad-Lacle's and Dr. Masri's opinions is supported by substantial evidence.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 18, 2017.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record